IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN F. FRANCIS, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 10-3052 |
| | ) | |
| RAY ROBERTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendants' motion for summary judgment. (Doc. 43). The matter has been fully briefed and is ripe for decision. (Docs. 44, 59, 60). Plaintiff filed this pro se 42 U.S.C. § 1983 action against defendants in their individual and official capacities and alleges that defendants violated his Eighth Amendment right. For the reasons stated herein, defendants' motion is granted in part and denied in part.

**I.   FACTS**

The following summary of facts is viewed in the light most favorable to plaintiff.

On January 20, 2009, plaintiff was placed in an observation cell in B cellhouse, a segregation cellhouse, at El Dorado Correctional Facility. The cell did not have electrical outlets, a desk, stool, or telephone and plaintiff did not receive all of his property because it was an observation cell. Plaintiff claims that the cell was filthy and that there was feces smeared on the floor and walls.

On January 21, plaintiff submitted a Form 9 to the Unit Team[1] alleging that "he had been deprived of cell cleaning, shower and phone privileges, his fan and his television and that there were feces on the floor." (Doc. 44 at 3). Plaintiff also requested to be moved to another cell. Someone responded that plaintiff would be moved to another cell once one became available, but the record does not identify that individual. Plaintiff was given highly diluted glass cleaner, disinfectant, and a handful of paper towels.[2] Plaintiff requested additional cleaning supplies such as bleach and rubber gloves, but these items were not permitted in the observation cell.

On January 23, plaintiff submitted grievance No. 00016209 to the Unit Team stating that there was apparent feces on the floor. Plaintiff further stated that with the exception of being allowed some of his property, he was being treated like a suicidal inmate.

On January 26, the Unit Team conducted plaintiff's initial and weekly segregation review. The Team noted that plaintiff was unhappy with his cell.

On January 27, plaintiff was moved to another segregation cell.

On February 10, defendant Maureen Malott responded to plaintiff's grievance and stated "[t]he conditions as you describe them are intolerable and I will look into that. You were moved from the cell you objected to being housed in to B1 236. Therefore there is no further action to be taken at this time." (Doc. 34-4 at 6).

---

[1] The record does not reflect the identity of the Unit Team members.

[2] It is unclear which defendant provided plaintiff with the cleaning supplies and when.

-2-

On February 18, Warden Ray Roberts upheld the Unit Team managers' response.

On February 28, plaintiff appealed grievance No. CA00016209 to the Secretary of Corrections. On March 20, Secretary of Corrections Designee Elizabeth Rice responded to plaintiff's grievance and found that plaintiff "offer[ed] no evidence or argument that suggests that the response rendered by the staff at the facility is wrong." (Doc. 44 at 4).

Plaintiff filed his complaint on March 15, 2010, and the Martinez report was filed on July 16, 2011.

## II.   SUMMARY JUDGMENT STANDARDS

Before analyzing defendants' motion for summary judgment, the court notes that plaintiff is not represented by counsel. It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. See Hall, 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant. See id. Plaintiff is expected to construct her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding

alleged injuries.  See Hill, 14 F. Supp.2d at 1237.  Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions.  See id.  In the end, plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment.  See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material.  See Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991).

Defendants initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Adler, 144 F.3d at 670.  Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with

affidavits or other similar materials <u>negating</u> [plaintiff's]" claims or defenses.  <u>Celotex</u>, 477 U.S. at 323 (emphasis in original). Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. <u>See</u> <u>Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

If defendants properly supports their motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  <u>Adler</u>, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.  <u>See</u> <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir. 1994).  Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  <u>Conaway v. Smith</u>, 853 F.2d 789, 793 (10th Cir. 1988).  Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and evidence.  Local Rule 56.1 requires the movant to set forth a concise statement of material facts.  D. Kan. Rule 56.1.  Each fact must appear in a separately numbered paragraph and each paragraph must

refer with particularity to the portion of the record upon which the defendant relies. See id. The opposing memorandum must contain a similar statement of facts. Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the number of the defendants' fact that he disputes. The court may, but is not obligated to, search for and consider evidence in the record that would rebut the defendants' evidence, but that plaintiff has failed to cite. See Mitchell, 218 F.3d at 1199; Adler, 144 F.3d at 672. All material facts set forth in the statement of defendants shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of plaintiff. See id.; Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah). A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. See Adams, 233 F.3d at 1246. Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by

references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). See Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722 (2d ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**III.   ANALYSIS**

### 1983 Claims

When law enforcement officers abuse their power, suits against them allow those wronged an effective method of redress. See Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982)). Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights,

it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). It is undisputed that defendants were acting under color of state law at all times relevant to plaintiff's complaint.

### Eleventh Amendment Immunity

"The Eleventh Amendment provides: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" U.S. Const. Amend. XI; Meade v. Grubbs, 841 F.2d 1512, 1524-25 (10th Cir. 1988). The Eleventh Amendment also bars suits against the state, its agencies, and officers acting in their official capacities from the state's own citizens. Meade, 841 F.2d at 1525.

In his complaint, plaintiff names defendants in their official and "personal" capacities. To the extent that plaintiff is seeking monetary damages against defendants in their official capacities, summary judgment is granted in favor of defendants on plaintiff's official capacity claims.

### Eighth Amendment

Plaintiff claims that defendants subjected him to cruel and unusual punishment when they confined him to an observation cell for one week that was allegedly unsanitary.

-8-

> To prevail on a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is " 'sufficiently serious' " to implicate constitutional protection, and (2) prison officials acted with " 'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 , 302-03, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). In order to satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. With regard to the second requirement, the Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835, 114 S. Ct. 1970. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37, 114 S. Ct. 1970.

DeSpain v. Uphoff, 264 F.3d 965, 971-72 (10th Cir. 2001).

### 1.   Objective Factor

Although not addressed by defendants[3], the Tenth Circuit has held that some incidents of exposure to human waste are sufficiently serious to satisfy the objective component of an Eighth Amendment violation. Barnes v. Wiley, No. 06-1307, 2006 WL 3190274, *2 (10th Cir. Nov. 6, 2006) (citing DeSpain, 264 F.3d at 974-75; Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001); McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001)). "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment." DeSpain, 264 F.3d at 974.  The

---

[3] Defendants cite White v. Nix, 7 F.3d 120 (8th Cir. 1993) for the proposition that an eleven-day stay in an unsanitary cell did not violate the inmate's Eighth Amendment because of the brevity of the stay and the availability of cleaning supplies.  However, in White, the magistrate judge concluded that the cell was not covered with a mixture of dried human fecal matter and food as the inmate contended. Id. at 121.

-9-

court must consider the "the frequency and duration of the condition, as well as the measures employed to alleviate the condition[.]" Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001).

Plaintiff alleges in his complaint that he was exposed to another inmate's human waste smeared on the floors and walls of plaintiff's cell for one week. The Tenth Circuit held in DeSpain and McBride that exposure to another inmate's fecal matter for thirty-six hours and three days, respectively, satisfied the first prong in the Farmer test. DeSpain, 264 F.3d at 974-75; McBride, 240 F.3d at 1292. Thus, the court finds that plaintiff has satisfied the objective element of the analysis.[4]

2. Subjective Factor

The second factor the court must consider is whether defendants knew of the unsanitary conditions, i.e. feces in plaintiff's cell and disregarded the excessive risk to plaintiff's health.

> The test requires both knowledge and disregard of possible risks, a *mens rea* on a par with criminal recklessness. If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard.

DeSpain, 264 F.3d at 975 (internal citations omitted). Whether defendants knew of the substantial risk and ignored that risk is a factual question. Id.

In his complaint, plaintiff alleges that he asked the following defendants for help in cleaning his cell and that each refused: McWithey, Cannon, Jehner, Lee and Acresti. He further alleges that

---

[4] To the extent that plaintiff alleges that he was denied a fan, phone and TV, such a denial would not amount to an Eighth Amendment violation.

defendant Austin was "made aware" of the condition of his cell "orally and by inmate communication form." He makes a similar allegation with respect to defendant Malott. There is no allegation that Warden Roberts was aware of plaintiff's complaints during the relevant period, January 20-27, 2009. Plaintiff filed a written grievance on January 21 but the record is silent with respect to which of the defendants (other than Warden Roberts) was aware of the grievance during the relevant period.

Defendants collectively claim that plaintiff has presented no evidence that his cell was not power washed and cleaned in accordance with the prison's internal Sanitation Responsibility Handbook. This is true. However, the Martinez report indicated that "despite frequent cleaning, it is possible that residue would remain." (Doc. 34 at 4). Furthermore, defendants have presented no evidence that any one of them actually looked inside plaintiff's cell and saw no human waste. This absence was noted in the Martinez report. (Doc. 34 at 4).

The Martinez report notes that plaintiff claimed he could not get the hardened feces off the floor and around the toilet area. However, plaintiff did not claim that the feces was "fresh." (Doc. 34 at 4). The Tenth Circuit cases addressing issues dealing with human waste do not distinguish between "fresh" and/or "hardened" human waste, but instead look to whether human waste was present and the duration the inmate was subjected to it.

Defendants also collectively claim that plaintiff was provided with cleaning supplies within a reasonable time. However, the record does not state what day plaintiff was given the cleaning supplies and

-11-

who provided them. Was it a few hours after his Form 9 was filed on the January 21 or a few days later? Plaintiff claims that he was given the initial cleaning supplies only after repeated requests made after a number of days. (Doc. 59 at 2). Defendants do not dispute this statement of fact.

Unlike the facts in <u>Galloway v. Whetsel</u>, No. 03-6239, 2005 WL 459598, *2 (10th Cir. Feb. 28, 2005), plaintiff did file a grievance. Moreover, the Martinez report supports plaintiff's claim that the cleaning supplies provided to him were insufficient to remove the hardened fecal matter. As noted <u>supra</u>, despite frequent cleaning, which included power washing, it is possible that residue would remain in the observation cell.

The court finds that plaintiff has presented sufficient evidence such that the court[5] could find that one or more of the defendants (except Warden Roberts) was aware of the fecal matter in plaintiff's cell during the relevant time period. Whether the condition presented a risk to plaintiff's health and whether any of the defendants disregarded that risk are issues of fact which cannot be resolved based on the present submissions.

**IV. CONCLUSION**

Defendants' motion for summary judgment (Doc. 43) is granted as to plaintiff's § 1983 claims against all defendants in their official capacities, but denied as to plaintiff's § 1983 claims against all defendants in their individual capacities except Warden Roberts, whose motion is granted. The case will be pretried before the undersigned

---

[5] Plaintiff has not demanded a jury trial and the time has expired. Fed. R. Civ. P. 38.

judge on February 13, 2012 at 2:00 p.m. Proposed pretrial orders shall be submitted no later than February 6, 2012. State authorities will be responsible for plaintiff's transportation to and from the courthouse. The issues to be pretried pertain to the condition of plaintiff's cell, specifically the alleged fecal matter, each defendant's knowledge, if any, of plaintiff's complaint about the fecal condition and their response, if any. The other issue will be plaintiff's damages. The court has considered plaintiff's Motion for Restraining Order and defendants' response (Docs. 55 and 56) and finds the claims therein to be moot because the prison employee who allegedly threatened plaintiff has been discharged and further because the supposed retaliation of the unidentified "cronies" relates to plaintiff's ability to prosecute this case which, obviously, has not been interfered with.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. Defendants may not move for reconsideration on the basis of evidence and arguments which could have been included in their original motion. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>20th</u> day of January 2012, at Wichita, Kansas.

                                                  s/ Monti Belot
                                                  Monti L. Belot
                                                  UNITED STATES DISTRICT JUDGE